IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| LICIA BATCHELOR, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:23-CV-183 |
| | ) |
| v. | ) |
| | ) COMPLAINT AND |
| CITY OF WILSON, | ) JURY DEMAND |
| NORTH CAROLINA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Licia Batchelor, hereby brings this action against the City of Wilson, North Carolina, including its employees, agents, successors, and assigns (collectively, "City of Wilson" or "City"), and alleges upon information and belief as follows:

## INTRODUCTION

1. This is an action brought for discrimination in employment under the authority of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq (Title VII); 42 U.S.C. § 1981; The Fourteenth Amendment of the Constitution of the United States; and all applicable Laws of North Carolina under the authority of 28 U.S.C. § 1367 and all other federal and state laws protecting people against discrimination in the workplace.

2. The Plaintiff, a Hispanic woman, has undertaken and fulfilled all administrative requirements to be allowed to bring this lawsuit, including application directly to the Defendant for relief from discrimination by the Defendant and by application for relief through the Unites States Equal Employment Opportunity

Commission both of which have considered Plaintiffs complaints, issued dismissals or the equivalent outcome, and given the Plaintiff the right to bring this action and, this Complaint is brought within all of the applicable statutes and limitations rules provided by law.

3. Accordingly, all administrative remedies required by law have been exhausted without the requested relief, thereby giving the Plaintiff the right to file this Complaint in this honorable Court.

## THE PARTIES

4. Plaintiff Licia Batchelor is a citizen and resident of Wilson County, North Carolina.

5. Defendant City of Wilson is a municipal corporation organized under the laws of the State of North Carolina. It is located in Wilson County, North Carolina, and formerly employed Ms. Batchelor in its Police Department.

6. The City of Wilson Police Department is a department, division, or agency of the City of Wilson. The Police Department has the authority to act for and bind the City of Wilson with respect to the allegations contained in this complaint. The City of Wilson is responsible for, approved of, and ratified the acts, policies, practices, customs, and/or procedures that deprived and are depriving Ms. Batchelor of her rights, as set forth herein.

7. At all times relevant to this case, the City of Wilson, while engaged in affecting commerce, has employed 15 or more employees for each working day in each of 20 or more calendar weeks in the relevant years.

2

8. The City of Wilson is an entity capable of being sued under both federal and North Carolina law and enjoys no immunity from the claims alleged in this complaint.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over Ms. Batchelor's claims under federal law.

10. Ms. Batchelor's state law claims are properly before this Court pursuant to 28 U.S.C. § 1367(a) because those state law claims are so related to the claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. On August 1, 2023, the EEOC mailed Ms. Batchelor a Right to Sue letter after the U.S. Department of Justice declined prosecuting the case.

12. This complaint has been timely filed.

13. Ms. Batchelor has complied with all applicable requirements for administrative exhaustion of her claims, and all conditions precedent to the filing of this suit have been satisfied.

14. The venue is properly laid in this court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because it is a judicial district in which a defendant resides as well as a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

15. Ms. Batchelor began her employment as a sworn officer with the City of Wilson's Police Department in April 1998.

16. From 1998 to 2021, Ms. Batchelor consistently exceeded expectations in her performance evaluations. She received a salary increase for obtaining her bachelor's degree.

17. Ms. Batchelor was employed as a Sergeant with the City of Wilson Police Department with the duties and responsibilities associated with such a position, one of which involves supervising subordinate officers.

18. In 2021, it came to pass that Ms. Batchelor began experiencing corrective write-ups with some regularity. This increase of written corrective actions became more frequent after the untimely passing of Captain Reggie Smith, whom at the time of his passing held a superior rank over Ms. Batchelor.

19. Upon information and belief, a Captain of the Police Dept. (*sadly, the Captain referenced in this paragraph is now deceased*) had previously advised Ms. Batchelor "to proceed with caution while working at the PD" in the context of a conversation where he expressed his belief that Ms. Batchelor was being singled out.

20. The statement offered above by the Captain in a conversation with Ms. Batchelor can be corroborated by other officers who have intimate knowledge that such statements were made by the Captain concerning Ms. Batchelor.

21. On July 1, 2021, a Wilson Police Department Captain sent an email to the entire police department regarding a roll call training scheduled for July 19, 2021.

On August 3, 2021, the same Captain sent an email, identifying officers and civilians who failed to complete the July roll call training, which included a Hispanic female officer Ms. Batchelor was responsible for supervising.

22. On August 3, 2021, in reference to the subordinate officer missing the deadline, Ms. Batchelor advised a separate Captain of the Wilson Police Department of her plan to discipline, or otherwise manage, the subordinate officer concerning the missed training. During this date's conversation, she received feedback that her course of action was approved.

23. On August 4, 2021, Ms. Batchelor spoke to the same Captain again, who during this conversation advised her that he had changed his mind and that he would rather Ms. Batchelor document the discipline on a written City Correction Notice.

24. During the same conversation with the Captain on August 4, 2021, Ms. Batchelor discussed her concerns about the department's practice of discriminatory selection of which officers received written correction versus other officers who received only verbal correction.

25. The Captain listened to Ms. Batchelor's concerns but dismissed her concerns, and instead gave Ms. Batchelor a direct order to document the corrective action for the subordinate officer with a written correction notice.

26. Ms. Batchelor advised the Captain that she was going to write the correction notice, but that she was also going to document that she disagreed with a written correction on the discriminatory grounds previously stated.

5

27. The Captain, aware of her objection, stated to Ms. Batchelor that such an addendum to the corrective action was her choice, and he did not object to her adding her disagreement to the corrective notice for her subordinate officer.

28. On August 4, 2021, Ms. Batchelor wrote the correction notice and annotated her disagreement directly on the correction notice. This correction notice was reviewed and signed by the same Captain without any emendations, reviewed and signed by a Major of the police department without emendations, reviewed and signed by the Chief of Police without emendations, and finally submitted to the City Human Resources division.

29. On September 1, 2022, Agnes Speight (City of Wilson Human Resource Director) sent an email advising that HR disapproved of Ms. Batchelor's annotation of disagreement being present on the corrective notice/action. Agnes Speight's email was sent to all of Ms. Batchelor's chain of command, but Ms. Batchelor was not included in the email, nor was she aware of such disapproval by the City HR division.

30. Later in the day of September 1, 2021, a Captain of the department called Ms. Batchelor and advised her that she would need to remove her annotation on the corrective notice/action.

31. Ms. Batchelor re-iterated her concern of discrimination and further explained that she felt she needed to keep or annotation on the corrective notice to protect herself. The Captain replied with a direct Order that she remove her annotation.

6

32. Ms. Batchelor requested that she attach a memo on a separate paper with her concerns as an alternative to the annotation directly on the notice, to which the Captain replied with approval for her to attach a memo on a separate paper.

33. Ms. Batchelor began to voice her concerns of the discriminatory practices that she had observed and had spoken to several other commanders within the Wilson Police Department requesting some accountability on behalf of the department for their discriminatory practices that Ms. Batchelor has observed.

34. On September 1, 2021, Ms. Batchelor corrected the corrective notice and completed a memo of disagreement. She then emailed the new corrective notice and memo to the Captain for his approval, and after receiving his approval Ms. Batchelor met with her subordinate officer to go over the corrective notice.

35. This incident concerning Ms. Batchelor's subordinate officer occurred before March 22, 2022, the date Ms. Batchelor informed Major Stroud of the EEOC (Equal Employment Opportunity Commission) complaint that she filed.

36. The incident involving Ms. Batchelor's subordinate was not addressed or considered as a factor in evaluating Ms. Batchelor's individual performance until after March 22, 2022.

37. The Department, and only after March 22, 2022, used it as a reason to express concerns about Ms. Batchelor's performance as a supervisor. The concern of how she handled the above-mentioned subordinate issue only surfaced after she filed a complaint with the EEOC.

38. On March 25, 2022 a separate subordinate officer under the supervision of Ms. Batchelor required a corrective notice to be issued by Ms. Batchelor.

39. Ms. Batchelor voiced her disagreement in the manner of form that the corrective notice should be handled for the subordinate officer and was again given a direct order to issue a written corrective notice for this subordinate.

40. Ms. Batchelor complied with the Order to issue the written corrective notice and also attached a memo of disagreement in the same format as she had done for the previous subordinate written corrective notice, as described above.

41. On April 12, 2022, a Supervisory Investigation was formally opened concerning the attached Memo that Ms. Batchelor added to her corrective notice in March 2022.

42. However, Ms. Batchelor was not notified of SI concerning her memo until August 17, 2022, at which time she was advised that she would be undergoing an SI (Supervisory Investigation) for acting insubordinate (SI 2022-0017) because she attached a memo of disagreement to the written corrective notice of her subordinate after the Department claims Ms. Batchelor has been Ordered not to attach any memo of disagreement.

43. The written corrective notice with the attached memo concerning the March 25, 2022 incident was submitted and signed by Captain Winstead and all the way through the entire chain of command with their accompanying signatures.

44. On September 7, 2022, a Captain of the department confronted Ms. Batchelor about a subordinate officer who missed training due to that officer attending a law enforcement class at a police academy.

45. Ms. Batchelor had initially denied the subordinate's request to attend the class on the same day as the PD training.

46. However, the Captain asked Ms. Batchelor to do a written corrective notice on her subordinate for missing the training. Ms. Batchelor advised the Captain that she disagreed with the corrective action because he, himself, had approved the subordinate to attend the class instead of the training, to which he replied, "it doesn't matter if you agree or disagree, you will do whatever I direct you to do."

47. The Captain then instructed Ms. Batchelor to complete a written corrective action for her subordinate despite her objection.

48. A Major at the Department inquired about Ms. Batchelor's subordinate missing the training and explained how it is outside of policy for Officers to be approved for classes in lieu of going to training.

49. After a brief investigation, The Wilson Police Department became aware that the white male Captain allowed the white male officer to miss training, and no further action was requested of Ms. Batchelor, and all corrective actions ceased to move forward.

50. In July 2022, Ms. Batchelor had a private conversation with the same officer who missed training to attend a class. During the conversation, she expressed her concerns about the Wilson Police Department's internal discriminatory practices

9

Case 5:23-cv-00623-D-BM    Document 1    Filed 10/27/23    Page 9 of 18

that she has observed, along with other concerns she was having with policing in today's societal climate.

51. Upon information and belief, the subordinate officer then relayed the conversation that he had with Ms. Batchelor with a white male sergeant, who then reported to a white female Major that Ms. Batchelor was disparaging the PD in front of her subordinates.

52. Several days after the original conversation referenced in paragraph 49 above, Ms. Batchelor was informed that a white female Major intended to open an SI (Supervisory Investigation) concerning the conversation that she had with the subordinate officer.

53. Upon information and belief, the subordinate officer was contacted by another white male Sergeant of the PD and was asked to speak with that Sergeant concerning the conversation he had with Ms. Batchelor; however, the Sergeant called the subordinate officer prior to the meeting and canceled the meeting and nothing further occurred concerning Ms. Batchelor's conversation with her subordinate.

54. Over the next several months, a string of events occurred whereby various supervisors at the department began to take issue with Ms. Batchelor and her every move as an officer and a supervisor. All the events referenced in this allegation occurred after Ms. Batchelor vocalized her concerns over the discriminatory manner by which the department was using corrective actions amongst its officers.

55. The Wilson Police Department, and therefore the City of Wilson, chose to subject Ms. Batchelor to a series of insults and retaliatory measures when they attempted to discipline her following an internal affairs inquiry that was initiated after a complaint was filed against her by her supervisors, who were already closely monitoring her performance as a police officer and supervisor.

56. Throughout the internal affairs investigation and subsequent appeals conducted through the City's administrative process, Ms. Batchelor was still subjected to discriminatory and retaliatory behavior.

57. The administrators of the police department persisted in labeling her as an inadequate supervisor without taking responsibility for the discrimination and hostility that she had to endure when interacting with her superiors.

58. The Department's, and later the City's, investigation was unfair and biased, as they only considered evidence that supported their own agenda while ignoring important facts and circumstances that could have exonerated Ms. Batchelor. Such behavior suggests discrimination and retaliation motivated the investigation.

59. The police department conducted promotional assessments in 2018 and again in 2022.

60. Ms. Batchelor participated in both of the assessment processes seeking the position of Captain in each assessment.

61. Ms. Batchelor, among other reasons, sought to stem the discriminatory practices she had observed and decided to apply for these internal promotion

processes that would have allowed her to be in a position of authority to exact change within the department.

62. Despite having met the qualifications listed for the position that she applied for, the position that Ms. Batchelor sought in 2018 was given to a white male.

63. Again, despite having met the qualifications listed for the position that she applied for, the position that Ms. Batchelor sought in 2022 was given to a white male.

64. There have been numerous discrepancies witnessed by Ms. Batchelor, and others who are willing to testify, about the City of Wilson's employee promotion process concerning the Police Department, for instance, a black female officer, was promoted to Captain two years after being arrested for a DWI in Johnston County. Similarly, a white male, received a promotion to Captain despite being under investigation by internal affairs and for being out of work for a few months related to the investigation.

65. In stark contrast to those two examples previously mentioned, and other examples that are known, Ms. Batchelor, is a highly respected officer in the police department. She has served in her position with dedication and has been an active member involved with the community for its betterment thereof.

66. The City of Wilson has no record, at least in recent and relevant history, that a Hispanic female has been promoted to a position higher than that of a Sergeant. Notwithstanding the fact that the population of Wilson, NC is made up of nearly 11% Hispanics, as per the July 2021 and July 2022 population data available,

no Hispanic individual has been promoted to a position higher than that of a Sergeant during the recent and relevant history.

67. Ms. Batchelor was unsuccessful in her attempts to prevail in the internal administrative appeals, and as a result, the City's investigation concluded unfavorably for her. Consequently, Ms. Batchelor was demoted from her rank as a sergeant and received a 120-hour suspension without pay on February 15, 2023. This was due to her alleged violation of departmental policies SI-20222017 and SI-20220051.

68. When Ms. Batchelor returned to work after her suspension, she was relegated to participating in a mandatory field training process—a process typically reserved for brand new officers to the police department and not 20-year veterans of law enforcement.

69. As a result of the continued treatment the Department showed toward Ms. Batchelor, she felt that she had no alternative but to retire early so that the many years she served as a law enforcement professional would not be lost due to some unforeseen and false negative action against her in the future.

## COUNT I:

### (Discrimination)

70. The Plaintiff hereby incorporates all of the foregoing allegations of the Complaint as if set forth herein verbatim.

71. Defendant directly and/or by and through its managers and employees intentionally and with reckless indifference to Defendant's obligations under Title

VII, insulted, abused, and harassed Plaintiff because of her race and/or sex as detailed in the above facts common to all counts.

72. The Defendant's discrimination was pervasive and regular.

73. The Defendant's discrimination detrimentally affected the Plaintiff and would detrimentally affect a reasonable person of the same race or sex in that position.

74. The discrimination suffered by the Plaintiff affected the terms, conditions, and privileges of her employment.

75. Defendant, through its agents, servants, and employees, is liable for the discrimination of the Plaintiff.

76. Defendant's management-level employees had actual and/or constructive knowledge about the existence of a racially hostile environment and not only failed to take prompt and adequate remedial action but participated in creating this hostile environment.

77. The Plaintiff, based upon all of the allegations of the Complaint, has established that she is entitled to a judgment from this Court that her civil rights, as protected by Title VII have been violated in as much as she has been deprived of fair employment practices by the Defendant directly because of her race; and such direct and proximate unlawful conduct entitles her to damages and other relief as allowed and determined by this Court; and that she is also entitled to redress allowed by the laws of North Carolina in such cases made and provided. Plaintiff individually realleges and incorporates by reference paragraphs one through twenty-one into this

count as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff suffered intentional discrimination because of her race.

78. As a direct and proximate result of this discrimination and harassment, the Plaintiff has suffered pain, mental anguish, embarrassment, humiliation and economic damages.

## Count II:
## (Retaliation)

79. The Plaintiff hereby incorporates all of the foregoing allegations of the Complaint as if set forth herein verbatim, and further alleges that at all times relevant hereto, the Plaintiff was retaliated against in violation of the provisions of Title VII for engaging in the protected activity of notifying the Defendant that she opposed the racial discrimination and harassment to which she was subjected.

80. Defendant directly and/or by and through its employees intentionally, with malice and reckless indifference to its obligations under Title VII, retaliated against the Plaintiff for filing internal racial discrimination complaints and for filing a complaint with the EEOC.

81. The retaliatory conduct the Plaintiff was subjected to constitutes an adverse employment action because Plaintiff was subjected to unmeritorious investigations that harassed the Plaintiff, hindered her ability for promotion, and ultimately led to the Plaintiff's constructive discharge.

82. The constructive discharge allegation is supported by way of the Plaintiff choosing to retire early, and the loss of benefits that decision entails, versus

staying under the employ of the agency that acted towards her in such a discriminatory and retaliatory manner.

83. All the injuries listed in this count against the Defendant are causally linked to her filing internal racial discrimination complaints and a complaint with the EEOC.

84. Defendant and its employees were fully aware of the retaliation against the Plaintiff detailed herein.

85. Defendant could have, and should have, taken steps that would have prevented the deprivation of the Plaintiff's rights caused by this retaliation.

86. As a direct and proximate result of this retaliatory action, the Plaintiff has suffered pain, mental anguish, embarrassment, humiliation, and economic damages.

### Count III:
### Termination in Violation of
### North Carolina Public Policy

87. The Plaintiff hereby incorporates all of the foregoing allegations of the Complaint as if set forth herein verbatim.

88. It is the public policy of the State of North Carolina that all persons shall be able to seek, obtain, and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex, or handicap by employers which regularly employ 15 or more employees.

16

Case 5:23-cv-00623-D-BM    Document 1    Filed 10/27/23    Page 16 of 18

89. The Plaintiff, by and through the actions of the Defendant, was not able to hold employment without discrimination or abridgement on account of her race and sex.

90. Pursuant to the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, and North Carolina common law, the actions of the City of Wilson resulted in the Plaintiff's constructive discharge in violation of North Carolina public policy due to her race and sex.

91. The Plaintiff is therefore entitled to compensatory damages and other appropriate relief provided by North Carolina law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Licia Batchelor, respectfully prays that this Court grant the following relief:

1. Grant her a trial by jury on all claims so triable;

2. Grant her compensatory and other damages, including damages for back pay, lost benefits, loss of economic opportunities, past and future medical and expenses, past and future mental and emotional distress, anguish, humiliation, and suffering, past and future pain and suffering, past and future loss of enjoyment of life, expenses necessary to secure new employment, and past and future injury to her reputation;

3. Grant her an award of front pay, including an award for lost future benefits, given that reinstatement is not feasible in this case;

4. Grant her an award of punitive damages pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 1981a, and as may be otherwise allowed by applicable law;

5. Grant her prejudgment and post-judgment interest;

6. Grant her attorneys' fees, costs, and expenses pursuant 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and as may be otherwise allowed by applicable law;

7. Grant declaratory and injunctive relief, as provided by law;

8. Tax costs of this action against defendant City of Wilson; and

9. Grant her such other and further relief as this Court may deem just and proper.

This the 27 day of October, 2023.

Respectfully submitted,

LUSBY LAW, P.A.

Christopher R. Lusby
N.C. Bar No. 52274
2860 Ward Blvd., Suite A
Wilson, North Carolina 27893
Telephone: (252) 221-3223
Fax: (252) 364-4765
chris@lusbylaw.com

*Counsel for Plaintiff*
**Licia Batchelor**

18