IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-623-D

| | | |
|---|---|---|
| LICIA BATCHELOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

On October 27, 2023, Licia Batchelor ("Batchelor" or "plaintiff") filed an action against

the City of Wilson, North Carolina ("Wilson" or "defendant") [D.E. 1]. On October 31, 2023,

Batchelor filed an amended complaint [D.E. 4]. Batchelor alleges: (1) race discrimination in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., (2)

sex discrimination in violation of Title VII, (3) a racially hostile work environment in violation of

Title VII, (4) retaliation in violation of Title VII, and (5) wrongful termination in violation of the

North Carolina public policy. See [D.E. 4] ¶¶ 70–91.

On February 5, 2024, Wilson moved to dismiss Batchelor's complaint [D.E. 11] and filed

a memorandum [D.E. 12] and exhibit [D.E. 13] in support. See Fed. R. Civ. P. 12(b)(6). On

February 19, 2024, Batchelor responded in opposition [D.E. 14]. As explained below, the court

grants defendant's motion to dismiss in part and denies it in part.

I.

Batchelor is a Hispanic woman. See Am. Compl. [D.E. 4] ¶ 2. In April 1998, she began

working for the Wilson Police Department. See id. at ¶ 15. From 1998 to 2021, Batchelor

exceeded expectations. See id. at ¶ 16. Batchelor eventually became a sergeant and supervised

other officers. See id. at ¶ 17. In 2018, Batchelor sought a promotion to captain but did not get it. See id. at ¶¶ 59–62. A white male received the promotion. See id. at ¶ 61.

In 2021, Batchelor began receiving regular written warnings and the warnings increased over time. See id. at ¶ 18. In 2021, a now-deceased captain in the Wilson Police Department warned Batchelor to "proceed with caution while working at the [Wilson Police Department]." Id. at ¶ 19.

On July 1, 2021, a police captain scheduled a roll call training on July 19, 2021. See id. at ¶ 21. On August 3, 2021, the captain notified Batchelor that one of her subordinates, a Hispanic female, failed to attend roll call training. See id. Batchelor received approval from a different captain to discipline the subordinate concerning the missed training. See id. at ¶ 22. The following day, the captain told Batchelor to document the discipline "on a written City Correction Notice." Id. at ¶ 23. Batchelor informed the captain that she believed Wilson engaged in discriminatory practices in how it chose to issue oral corrections versus written corrections. See id. at ¶ 24. Nonetheless, the captain ordered Batchelor to issue a written correction. See id. at ¶ 25. In response, Batchelor told the captain she would issue the written correction but simultaneously document the discriminatory nature of the written correction. See id. at ¶ 26. The captain told her she could do this through an addendum to the written correction. See id. at ¶ 27. Instead, Batchelor annotated her disagreement directly on the City Correction Notice and submitted the written correction through her chain of command to human resources. See id. at ¶ 28.

On September 1, 2021, human resources informed Batchelor's chain of command that her annotated note was unacceptable. See id. at ¶ 29. Later that day, a captain called Batchelor and told her to remove the annotation. See id. at ¶ 30. Batchelor objected. See id. at ¶ 31. The captain ordered Batchelor to remove the annotation. See id. Batchelor asked to attach a memorandum to

2

the written correction noting her objection. See id. at ¶ 32. The captain approved her request. See id.

In February 2022, Batchelor applied for a promotion to captain. See id. at ¶ 63; [D.E. 13] 1. The Wilson Police Department promoted a white male. See Am. Compl. at ¶ 63.

On March 22, 2022, Batchelor told Major Stroud that she filed a complaint with the EEOC concerning the annotation incident. See id. at ¶¶ 35–36; but see [D.E. 13] 1 (EEOC charge dated May 4, 2022). Later in March 2022, Batchelor had her individual performance review. See Am. Compl. at ¶¶ 36–37. At her review, her supervisor raised concerns about how she handled the annotation and memorandum incident. See id. at ¶ 37.

On March 25, 2022, Batchelor learned that she needed to issue a corrective notice to another subordinate. See id. at ¶ 38. Batchelor disagreed with issuing a written correction, but a superior officer ordered her to do so. See id. at ¶ 39. Thus, she attached a memorandum to the written correction noting her objection. See id. at ¶ 40.

On April 12, 2022, without Batchelor's knowledge, the Wilson Police Department initiated a supervisory investigation of Batchelor arising from her March 2022 corrective notice insubordination. See id. at ¶ 41. On May 4, 2022, Batchelor filed an EEOC charge alleging retaliation, national origin discrimination, and sex discrimination in violation of Title VII. See [D.E. 13] 1 (EEOC charge).

In July 2022, Batchelor told a subordinate (who is the same subordinate in the September 7, 2022 training incident) about her concerns over the "internal discriminatory practices" of Wilson's police department and "policing in today's societal climate." Am. Compl. at ¶ 50. The subordinate officer reported Batchelor's disparaging comments to another Batchelor subordinate who reported them to a white female major. See id. at ¶ 51. Based on this report, the major opened

3

another supervisory investigation concerning Batchelor disparaging the department to subordinates. See id. at ¶ 52.

On August 17, 2022, the Wilson Police Department informed Batchelor of its investigation of her alleged March 2022 insubordination. See id. at ¶¶ 42–43. On September 7, 2022, Batchelor learned another subordinate failed to attend a Wilson Police Department training session because the officer attended a law enforcement class at an in-service police academy. See id. at ¶ 44. Batchelor alleges a captain approved the subordinate missing the Wilson Police Department training session but then ordered Batchelor to issue a written corrective action to the officer about missing the Wilson Police Department training. See id. at ¶¶ 46–47. Upon further investigation, the Wilson Police Department determined that the officer had been approved to miss the Wilson Police Department training session and decided not to issue any corrective action to the officer. See id. at ¶¶ 48–49.

According to Batchelor, no "Hispanic female has been promoted to a position higher than that of a [s]ergeant." Id. at ¶ 66. Moreover, Batchelor alleges she was subject to "a series of insults and retaliatory measures when [the Wilson Police Department] attempted to discipline her following an internal affairs inquiry that was initiated after a complaint was filed against her by her supervisors." Id. at ¶ 55; see id. at ¶¶ 56–59.

Following the supervisory investigations and Batchelor's appeals, the Wilson Police Department concluded that Batchelor violated departmental policies. See id. at ¶ 67. On February 15, 2023, the Wilson Police Department demoted Batchelor and suspended her for 120 hours without pay. See id. When Batchelor returned to work, Batchelor had to participate in an officer mandatory field training process—"a process typically reserved for brand new officers to the [Wilson] [P]olice [D]epartment and not 20-year veterans of law enforcement." Id. at ¶ 68. On an

4

unknown date after February 15, 2023, Batchelor retired. See id. at ¶ 69. On August 1, 2023, the EEOC issued Batchelor a right-to-sue notice. See id. at ¶ 11.

## II.

### A.

In Batchelor's response in opposition to Wilson's motion to dismiss, Batchelor attempts to add a claim under 42 U.S.C § 1983 for constructive discharge in violation of the Fourteenth Amendment and a claim under 42 U.S.C. § 1981. See [D.E. 14] 13–15; cf. [D.E. 12] 1, 25–26. Batchelor cannot use a response in opposition to a motion to dismiss to amend her complaint. See United States ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Admin. of EPA, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184–85 (4th Cir. 2013); Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Optima Tobacco Corp. v. U.S. Flue-Cured Tobacco Growers, Inc., No. 5:16-CV-889, 2019 WL 4858848, at *7 (E.D.N.C. Sept. 30, 2019) (unpublished); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105, 2011 WL 4527382, at *7–8 (E.D.N.C. Sept. 28, 2011) (unpublished). Accordingly, these claims are not in this case.

### B.

Wilson alleges that Batchelor's failure to allege race discrimination or a racially hostile work environment in her EEOC charge bars Batchelor from pursuing those claims in this action. See [D.E. 12] 18–19. Before a person may file a claim in court under Title VII, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action

5

or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 547 U.S. 541 (2019); see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies with respect to a plaintiff who files an EEOC charge with respect to one adverse employment action (such as a failure to promote), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as a termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and to permitting the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

6

Batchelor's EEOC charge alleges retaliation, national origin discrimination, and sex discrimination. See [D.E. 13] 1. It does not allege race discrimination. See id. Nonetheless, Batchelor argues that Wilson "had actual/constructive knowledge of the existence of a racially hostile working environment in the [a]mended [c]omplaint" that was "reasonably related to her [c]harge." [D.E. 14] 9 (citing Sydnor, 681 F.3d at 594).

In Sydnor, the plaintiff filed an EEOC charge alleging disability discrimination because her employer denied her a specific accommodation. See Sydnor, 681 F.3d at 594. The plaintiff then filed an ADA action and sought a different accommodation than the accommodation she mentioned in her EEOC charge. See id. at 594–95. The United States Court of Appeals for the Fourth Circuit held that the content of a plaintiff's EEOC charge determines the scope of the plaintiff's right to maintain a Title VII claim in court. See id. at 595. The Fourth Circuit then held that the variation in the specific accommodation that plaintiff requested in her EEOC charge as compared to her complaint in court did not mean that the plaintiff had failed to exhaust her administrative remedies for her failure-to-accommodate claim. See id.

Sydnor does not help Batchelor. Unlike in Sydnor where the plaintiff pursued a failure-to-accommodate claim in her EEOC charge and in her lawsuit, Batchelor's EEOC charge does not mention race discrimination or a racially hostile work environment. See [D.E. 13] 1. Nonetheless, Batchelor seeks to pursue these two race-discrimination claims in this lawsuit. Batchelor cannot do so because she failed to exhaust her administrative remedies concerning these claims. See, e.g., Sydnor, 681 F.3d at 595; Chacko, 429 F.3d at 509–13; Miles, 429 F.3d at 491–92; Evans, 80 F.3d at 963.

In opposition, Batchelor argues that Herr v. American Kennel Club, No. 5:17-CV-547, 2018 WL 5291857, at *3 (E.D.N.C. Aug. 23, 2018) (unpublished), report and recommendation

7

adopted, No. 5:17-CV-547, 2018 WL 4565386 (E.D.N.C. Sept. 24, 2018) (unpublished), supports

permitting her race discrimination claim and racially hostile work environment claim to proceed.

See [D.E. 14] 11. The court rejects Batchelor's argument. In Herr, the court dismissed for failure

to exhaust administrative remedies all claims the plaintiff did not include in his EEOC charge.

Herr, 2018 WL 5291857, at *4. Thus, Herr supports dismissing Batchelor's race discrimination

claim and her racially hostile work environment claim. Accordingly, the court dismisses without

prejudice for failure to exhaust administrative remedies Batchelor's Title VII race discrimination

claim and her Title VII racially hostile work environment claim. See, e.g., Sydnor, 681 F.3d at

595; Jones, 551 F.3d at 300; Chacko, 429 F.3d at 509–13; Miles, 429 F.3d at 491–92; Evans, 80

F.3d at 963; Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F. Supp. 3d 797, 813–15 (M.D.N.C.

2021); Jackson v. Rex Hosp., Inc., No. 5:20-CV-192, 2020 WL 6532829, at *5 (E.D.N.C. Nov. 5,

2020) (unpublished); Shipman v. United Parcel Serv., Inc., No. 5:12-CV-589, 2013 WL 5525005,

at *9 (E.D.N.C. Oct. 3, 2013) (unpublished); Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp.

2d 610, 617–18 (E.D.N.C. 2012).

## C.

Wilson argues that Batchelor failed to timely file her EEOC charge for certain claims. See

[D.E. 12] 8. Under Title VII, a person must file her EEOC charge within 180 days of each alleged

discrete act of discrimination under Title VII. See, e.g., 42 U.S.C. § 2000e-5(e)(1), (f)(1); Davis,

587 U.S. at 543–44; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–15 (2002); EEOC

v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423,

428 (4th Cir. 2004); Bryant, 288 F.3d at 132; Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL

4289610, at *2 (E.D.N.C. Sept. 7, 2018) (unpublished); Young v. Onslow Water & Sewer Auth.,

No. 7:16-CV-259, 2018 WL 405975, at *4 (E.D.N.C. Jan. 12, 2018) (unpublished); Barcliff v.

8

N.C. League of Muns., No. 5:10-CV-244, 2011 WL 3290578, at *2 (E.D.N.C. Aug. 1, 2011) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 606 n.3 (E.D.N.C. 2006). If a party fails to timely file an EEOC charge, the party "lose[s] the ability to recover for" that claim because the claim is not "actionable." Morgan, 536 U.S. at 110, 113. Only adverse employment actions "that took place within the timely filing period are actionable." Id. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Williams, 370 F.3d at 428; Evans, 80 F.3d at 963; Coleman, 2018 WL 4289610, at *2; Young, 2018 WL 405975, at *4–5; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished); Barcliff, 2011 WL 3290578, at *4; McDougal-Wilson, 427 F. Supp. 2d at 606 n.3.

Determining the timeliness of plaintiffs' EEOC charges requires the court to identify the precise "unlawful employment practice" at issue. Del. State Coll. v. Ricks, 449 U.S. 250, 257 (1980). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id.; United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Ricks, 449 U.S. at 258 (quotation omitted); United Air Lines, Inc., 431 U.S. at 558. The cause of action arises in a Title VII case "when the employee receives unequivocal notice of the facts giving rise to [her] claim or a reasonable person would know of the facts giving rise to a claim." Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 589 (5th Cir. 1995) (per curiam); see Hearn v. Town of Oak Island, No.

21-1598, 2022 WL 7935994, at *1 (4th Cir. Oct. 14, 2022) (per curiam) (unpublished); Martin v. Sw. Va. Gas Co., 135 F.3d 307, 310 (4th Cir. 1998) (collecting cases).

If a plaintiff is "retaliated against for filing an administrative charge," then the plaintiff "may raise [a] retaliation claim for the first time in federal court." Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). This principle "is the inevitable corollary of [the] generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Id. (quotations omitted) (collecting cases).

The complaint alleges seven possible unlawful employment practices: (1) In 2018 and February 2022, Batchelor did not receive a promotion to captain when she applied. Am. Compl. ¶¶ 59–63. (2) "After March 22, 2022," the Wilson Police Department "express[ed] concerns about [Batchelor's] performance as a supervisor." Id. at ¶ 37. (3) On April 12, 2022, the Wilson Police Department began a supervisory investigation of Batchelor. See id. at ¶ 41. (4) In July 2022, the Wilson Police Department initiated a second supervisory investigation of Batchelor. See id. at ¶ 52. (5) On an unknown date, the Wilson Police Department began an internal affairs inquiry of Batchelor. See id. at ¶¶ 55–56. (6) On February 15, 2023, Batchelor was demoted from sergeant and received a 120-hour suspension without pay. See id. at ¶¶ 67–68. (7) "As a result of the continued treatment," Batchelor "felt so bad she had no alternative but to retire early." Id. at ¶ 69.

Batchelor filed her EEOC charge on May 4, 2022. See [D.E. 13] 1. Thus, any Title VII claims for discrete acts of discrimination that occurred before November 5, 2021, are time barred. See, e.g., Morgan, 536 U.S. at 109–15. Accordingly, the court dismisses as untimely any claim that occurred before November 5, 2021, including Batchelor's 2018 non-promotion claims.

10

As for Batchelor's sex discrimination claims, any claim after May 4, 2022, for an alleged discrete act of sex discrimination under Title VII is untimely. See 42 U.S.C. § 2000e-5(e)(1); Morgan, 536 U.S. at 109–15. Moreover, Batchelor failed to exhaust her administrative remedies for her July 2022 second supervisory investigation claim, her February 2023 demotion claim, her February 2023 suspension claim, and her unknown date constructive discharge claim. Cf. [D.E. 13] 1. Thus, the only viable possible unlawful employment practices for her sex discrimination claims are her February 2022 failure-to-promote claim, her claim that in March 2022 a superior expressed concern about Batchelor's performance as a supervisor, and her April 12, 2022 supervisory investigation claim.

### III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must

11

"nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Batchelor alleges a Title VII sex discrimination claim against Wilson. See Am. Compl. ¶¶ 70–78. A plaintiff need not plead a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to survive a motion to dismiss. See, e.g., Barbour v. Garland, 105 F.4th 579, 590 (4th Cir. 2024); Holloway v. Maryland, 32 F. 4th 293, 298 (4th Cir. 2022); Bing v.

12

Bravo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). In order to state a sex discrimination claim under Title VII, Batchelor must plausibly allege that Wilson discriminated against her because of her sex with respect to her compensation, terms, conditions, or privilege of employment. See, e.g., Kelly v. Town of Abingdon, 90 F.4th 158, 169 (4th Cir. 2024); Holloway, 32 F.4th at 299; Lemon v. Myers Bigel, P.A., 985 F.3d 392, 399–400 (4th Cir. 2021); Bing, 959 F 3d. at 616–17; McCleary-Evans, 780 F.3d at 585–86; Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc).

In considering whether Batchelor plausibly alleged a sex discrimination claim under Title VII, Batchelor must plausibly allege an adverse employment action. See, e.g., Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024); Holloway, 32 F.4th at 299; Bing, 959 F.3d. at 616–17; McCleary-Evans, 780 F.3d at 585–86. An adverse employment action does not require a "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar" change in working conditions. Muldrow, 601 U.S. at 355 (quotation omitted). Rather, it requires "some harm respecting an identifiable term or condition of employment." Id.; see Yates v. Spring Indep. Sch. Dist., ___ F.4th ___, 2024 WL 3928095, at *4 (5th Cir. Aug. 26, 2024); Stratton v. Bentley Univ., ___ F.4th ___, 2024 WL 3823034, at *6 n.6 (1st Cir. 2024); Peifer v. Bd. of Prob. & Parole, 106 F.4th 270, 277 (3d Cir. 2024); Rios v. Centerra Grp. LLC, 106 F.4th 101, 112 (1st Cir. 2024); Cole v. Grp. Health Plan, Inc., 105 F.4th 1110, 1114 (8th Cir. 2024); Milczak v. Gen. Motors, LLC, 102 F.4th 772, 787 (6th Cir. 2024), reh'g denied sub nom. Mllczak v. Gen. Motors, LLC, No. 23-1462, 2024 WL 3205990 (6th Cir. June 17, 2024) (unpublished). Moreover, to "discriminate against means [to] treat worse." Muldrow, 601 U.S. at 355 (quotation omitted). An employee need only be "treat[ed]

13

worse" respecting an identifiable term, condition, or privilege of employment based on her protected status, such as sex. Id. Thus, an adverse employment action includes a "disadvantageous change to the compensation, terms, conditions, or privileges of employment because of a protected status." Cole, 105 F.4th at 1114; see Rios, 106 F.4th at 112.

In Muldrow, a female police sergeant filed a Tile VII sex discrimination claim and alleged that the St. Louis Police Department transferred her from one job as a sergeant to another job as a sergeant because she was a woman. See Muldrow, 601 U.S. at 350. Specifically, she alleged that the St. Louis Police Department transferred her from a plainclothes job in the Intelligence Division to a uniformed job in the Department's Fifth District because of her sex. Id. at 351. Although the sergeant's "rank and pay remained the same in the new position, her responsibilities, perks, and schedule did not." Id. With respect to the requirement of an adverse employment action, the Supreme Court held that a Title VII plaintiff alleging a sexually discriminatory transfer had to show "that the transfer brought about some 'disadvantageous' change in an employment term or condition." Id. at 354 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)). The Supreme Court explained that the phrase "terms, conditions, or privileges of employment" used in Title VII "is not used in the narrow contractual sense; it covers more than the economic or tangible." Id. (quotations omitted). Nonetheless, "[t]o make out a Title VII discrimination claim, a [claimant] must show some harm respecting an identifiable term or condition of employment." Id. at 354–55.

As for whether Batchelor has plausibly alleged sex discrimination, Batchelor is a woman. See Am. Compl. ¶ 2. Batchelor plausibly alleges that her failure to be promoted in February 2022 constitutes adverse action. See, e.g., Muldrow, 601 U.S. at 354. Batchelor has not, however, plausibly alleged that the March 2022 incident where a superior expressed concern about her

14

performance as a supervisor or that the April 2022 supervisory investigation constitute adverse action. See id. For example, unlike the plaintiff in Muldrow, Batchelor does not plausibly allege how the March 2022 expression of concern, or the April 2022 supervisory investigation harmed "an identifiable term or condition of employment." Id. at 354–55. Thus, Batchelor fails to state a sex discrimination claim concerning the March 2022 expression of concern or the April 2022 supervisory investigation.

As for the non-promotion in February 2022, Batchelor alleges that the Wilson Police Department promoted a white man instead of her. See Am. Compl. ¶ 63; [D.E. 13]. Batchelor's amended complaint says nothing about the qualifications or experience of this white man. See id. Batchelor's amended complaint, however, also alleges that on two other unidentified occasions, the Wilson Police Department promoted a black woman to captain and a white man to captain despite each candidate having personnel issues. See Am. Compl. ¶ 64. As in McCleary-Evans, Batchelor simply speculates that the Wilson Police Department did not select her instead of the white man in February 2022 because of her sex. See McCleary-Evans, 780 F.3d at 585–86, 588. As in McCleary-Evans, she asks the court to infer sex discrimination despite the obvious alternative explanation that the Wilson Police Department selected the white man because the decisionmaker judged him more qualified or better suited for the position. See id.; Bing, 959 F.3d. at 616–17; see also Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 714–16 (4th Cir. 2024); Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019); Spencer v. Va. State Univ., 919 F.3d 199, 207–08 (4th Cir. 2019); Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008). Thus, Batchelor fails to plausibly allege a sex discrimination claim. See, e.g., Bing, 959 F 3d. at 616–18; McCleary-Evans, 780 F.3d at 588.

15

In response, Batchelor argues that a deceased captain warned Batchelor to "proceed with caution while working at the [Wilson Police Department]." Am. Compl. ¶ 19. It is unclear from this statement what the deceased captain meant. Thus, this statement does not add anything to Batchelor's sex discrimination claim.

Batchelor has not plausibly alleged a Title VII sex discrimination claim against Wilson. See, e.g., Bing, 959 F 3d. at 616–18; McCleary-Evans, 780 F.3d at 585–86, 588. Accordingly, the court dismisses without prejudice Batchelor's Title VII sex discrimination claim against Wilson.

## B.

Batchelor alleges a Title VII retaliation claim against Wilson. See Am. Compl. ¶¶ 79–86. To state a claim, Batchelor must plausibly allege that (1) she engaged in protected activity under Title VII, (2) her employer took some action against her that a reasonable employee would find materially adverse, and (3) her employer took the adverse action because of the protected activity. See, e.g., Barbour, 105 F.4th at 590; Massaro v. Fairfax Cnty., 95 F.4th 895, 902 (4th Cir. 2024); Cosby, 93 F.4th at 716; McIver v. Bridgestone Ams., Inc., 42 F.4th 398, 411 (4th Cir. 2022); Walton v. Harker, 33 F.4th 165, 177 (4th Cir. 2022); Holloway, 32 F.4th at 299–300; Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021); Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 653 (4th Cir. 2021); Kitlinski v. U.S. Dep't of Justice, 994 F.3d 224, 232 (4th Cir. 2021); Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020); Evans v. Int'l Paper Co., 936 F.3d 183, 195 (4th Cir. 2019); Perkins v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019); Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018); Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018); Guessous Fairview Prop. Inv., LLC, 828 F.3d 208, 217 (4th Cir. 2016); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Boyer-Liberto, 786 F.3d at 281; Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410

16

(4th Cir. 2013); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–70 (2006); Bonds, 629 F.3d at 384.

Title VII protects two kinds of activities: opposition and participation. See Netter v. Barnes, 908 F.3d 932, 937–38 (4th Cir. 2018); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282; Laughlin, 149 F.3d at 259. The opposition clause applies when an employee "opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (cleaned up); see Netter, 908 F.3d at 937–38; Boyer-Liberto, 786 F.3d at 282. The participation clause protects employees making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a); Laughlin, 149 F.3d at 259.

Under Title VII, material adversity "means [that an employer's actions] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (quotation omitted). Title VII does not redress "trivial harms" or provide a "general civility code for the American workplace." Id. (quotation omitted); see Oncale, 523 U.S. at 80. Rather, Title VII's anti-retaliation provision prohibits an employer's actions that "are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." White, 548 U.S. at 68 (quotation omitted); see Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). The court analyzes material adversity from the perspective of an objective, reasonable employee and ignores "a plaintiff's unusual subjective feelings." White, 548 U.S. at 68–69; see Bryant v. Bell

17

Atl. Md., Inc., 288 F.3d 124, 134–35 (4th Cir. 2002). Additionally, the court must account for the "particular circumstances" surrounding the alleged retaliation. White, 548 U.S. at 69.

A plaintiff must prove that "the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Center v. Nassar, 570 U.S. 338, 352 (2013); see Netter, 908 F.3d at 938; Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017); Guessous, 828 F.3d at 216–17; Foster, 787 F.3d at 249; Huckelba v. Deering, No. 5:16-CV-247, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). This causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 570 U.S. at 360; see Guessous, 828 F.3d at 217. As such, "[n]aked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032, at *3; see McCleary-Evans, 780 F.3d at 585–88.

"To establish a causal relationship between the protected activity and the [adverse action], a plaintiff must show that the decision maker was aware of the protected activity at the time the alleged retaliation occurred." Roberts, 998 F.3d at 124. An employee cannot plausibly allege a but-for causal connection between protected activity and the employer's adverse action without alleging that the decisionmaker who took the adverse action knew that the employee had engaged in protected activity. See Holland, 487 F.3d at 218; Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by White, 548 U.S. 53; see also Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); Gestamp S.C., L.L.C. v. NLRB, 769 F.3d 254, 261–62 (4th Cir. 2014).

18

Courts consider temporal proximity between an employer's knowledge of protected activity and an adverse action. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), abrogated on other grounds by Nassar, 570 U.S. 338. An adverse action taken shortly after an employer learned of protected activity typically permits a reasonable inference of causation. See Dowe, 145 F.3d at 657. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, [however,] . . . negates any inference that a causal connection exists between the two." Id. (finding three years too long to infer causation); see Breeden, 532 U.S. at 274 (same for 20 months); Massaro, 95 F.4th at 902 (same for 18 months); Roberts, 998 F.3d at 126 (same for three months); Penley v. McDowell Cnty. Bd. of Ed., 876 F.3d 646, 656 (4th Cir. 2017) (same for eight and nine months); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (same for 13 months). A plaintiff can rebut this conclusion by plausibly alleging that her employer's actions taken during the intervening period demonstrate retaliatory animus. See Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

Viewing Batchelor's complaint in the light most favorable to her, Batchelor plausibly alleges that she engaged in protected "opposition" activity beginning on August 4, 2021, when she informed a captain that she believed the city engaged in discrimination in how it chose to issue oral corrections versus written corrections concerning a female employee. See Am. Compl. ¶¶ 21, 24. She continued her opposition activities during her remaining employment with the Wilson Police Department. See id. at ¶¶ 31, 33, 40, 43, 46, 50, 54. On March 22, 2022, Batchelor told Major Stroud that she filed a charge with the EEOC concerning the annotation incident. See id. at ¶ 35. "After March 22, 2022," the Wilson Police Department "express[ed] concerns about

19

[Batchelor's] performance as a supervisor." Id. at ¶ 37. On April 12, 2022, the Wilson Police Department began a supervisory investigation of Batchelor based on her actions towards what she believed was a discriminatory practice. See id. at ¶ 41. Furthermore, in July 2022, the Wilson Police Department initiated a second supervisory investigation of Batchelor concerning her comments about discrimination. See id. at ¶ 52. And, on February 15, 2023, the Wilson Police Department demoted Batchelor and suspended her without pay for 120 hours. See id. at ¶ 67.

Although Batchelor did not actually file an EEOC charge until May 4, 2022, the Wilson Police Department had no reason to believe that Batchelor had not filed an EEOC charge in March 2022. See [D.E. 13] 1. Thus, Batchelor plausibly alleges that Wilson took action against her that a reasonable employee would consider materially adverse after she engaged in opposition activity. Moreover, Batchelor plausibly alleges the required but-for causation. See, e.g., Barbour, 105 F.4th at 591–60; Holloway, 32 F.4th at 299–300; Wilcox, 970 F.3d at 457; Nealon, 958 F.2d at 590. Accordingly, with one caveat, the court denies Wilson's motion to dismiss Batchelor's Title VII retaliation claim.

The one caveat concerns Batchelor's constructive discharge claim contained in her retaliation claim. See Am. Compl. ¶¶ 81–82. A constructive discharge claim requires Batchelor to plausibly allege her "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016) (quotation omitted); see Pa. State Police v. Suders, 542 U.S. 129, 147 (2004); Kelly, 90 F.4th at 169 n.7; Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 235 (4th Cir. 2022); E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 144–45 (4th Cir. 2017). The standard for intolerable working conditions sufficient to create a constructive discharge is higher than that for a hostile work environment claim. See, e.g., Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019). "[M]ere

20

dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted).

"Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (quotation omitted), abrogated on other grounds by Green, 578 U.S. 547. A plaintiff who fails to plausibly allege a hostile work environment necessarily fails to plausibly allege a constructive discharge. See, e.g., Suders, 542 U.S. at 147; Soto v. Town of Rolesville, ___ F. Supp. 3d ___, 2024 WL 1546918, at *9 (E.D.N.C. Apr. 9, 2024); Sunkins v. Hampton Roads Connector Partners, 701 F. Supp. 3d 342, 356 (E.D. Va. 2023). This principle dooms Batchelor's constructive discharge claim. Cf. Holloway, 32 F.4th at 300–01 (affirming the dismissal of a hostile work environment claim where the "complaint falls considerably short of alleging an abusive work environment"). Thus, the court dismisses the alleged constructive discharge claim contained in Batchelor's retaliation claim.

## C.

Batchelor alleges wrongful discharge in violation of North Carolina public policy through the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2. See Am. Compl. ¶¶ 115–18. Batchelor, however, retired. See id. at ¶ 69. Thus, the court construes Batchelor's claim as a wrongful constructive discharge claim in violation of public policy.

For this claim, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no

21

governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex. rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

North Carolina does not recognize a claim for wrongful discharge in violation of public policy. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531, 532 (2005) (per curiam); Gelin v. N-Able Techs., Inc., No. 5:22-CV-345, 2023 WL 3079420, at *4–5 (E.D.N.C. Apr. 25, 2023) (unpublished) (collecting cases); EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 609 (M.D.N.C. 2020); Miller v. Gerber Collision (Ne.), Inc., No. 4:19-CV-18, 2019 WL 1960337, at *2–3 (E.D.N.C. May 2, 2019) (collecting cases). Accordingly, the court dismisses Batchelor's wrongful discharge claim.

## IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss [D.E. 11]. The parties SHALL engage in a court-hosted mediation with United States Magistrate Judge Kimberly Swank.

22

SO ORDERED. This 4 day of September, 2024.

J. Dever
JAMES C. DEVER III
United States District Judge

23